# Wolfe *versus* Reynolds *et al.*

1. Nicholson lands purchased for the Commonwealth under the Acts of March 31st 1806 and March 29th 1807, are not open to warrant and survey as unappropriated land under the laws of the Land Office; they must be purchased under the Act of March 28th 1814.

2. A patent issued for such lands taken up under a warrant and survey is void and the Commonwealth is not estopped by the grant.

3. Land returning to the Commonwealth by escheat, forfeiture or other proceeding investing her with title, is not governed in its disposition by the ordinary laws, &c., regulating the Land Office.

4. Poor *v.* McClure, 27 P. F. Smith 214, recognised.

January 27th 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Northumberland county:* Of September Term 1875, No. 6.

This was an action of ejectment for a tract of 164 acres of land, brought May 11th 1868, by William F. Reynolds and others, against Jacob Wolfe; the defendant took defence for 108 acres

[Wolfe v. Reynolds.]

64 perches.   The land mentioned in the writ was part of the Nicholson lands.   It was taken up by Benjamin Betterton under a warrant of April 25th 1793, and survey of March 12th 1794 ; and was patented to John Nicholson May 5th 1794.   He having become largely indebted to the Commonwealth, judgments in her favor were recovered against him ; they were liens on all his lands in the state.

By an Act of Assembly passed March 31st 1806, 4 Sm. Laws 355, for the purpose of collecting these judgments, the governor was authorized to appoint three commissioners, who, amongst other duties, were required to average the demand on each of the Nicholson tracts, and report to the governor ; he was to cause the land to be sold, &c., and in certain cases the commissioners had authority to purchase the lands for the use of the Commonwealth.   Cadwallader Evans, Joseph Hiester and John Lyon were appointed commissioners under this act.   On the 19th of March 1807, 4 Sm. Laws 381, a supplement to this act was passed by which the governor was directed to issue process to the commissioners requiring them or a majority of them to sell the lands, &c. The commissioners were to make return into the office of the secretary of the Commonwealth, who, upon receiving a proper certificate that the purchase-money had been paid, was to execute and deliver to the purchasers deeds for the lands sold.   By sect. 5 of the act it was provided, that if the commissioners should deem it better to purchase the land than suffer it to be sold for less than its estimated value, they were authorized to purchase and make return into the office of the secretary of the Commonwealth which should vest in the Commonwealth such title as John Nicholson had and the land so purchased should be disposed of as should be thereafter directed by law.   Under process issued by Governor McKean by virtue of this act, Hiester and Evans, two of the commissioners, returned that they had bought in the Betterton tract, with other Nicholson lands, for the Commonwealth.

By Act of March 28th 1814, 6 Sm. Laws 226, the secretary of the Land Office and the surveyor-general were authorized on application made to them to sell by separate tracts any lands of Nicholson which had been purchased for the use of the Commonwealth, take bonds for the purchase-money payable to the state treasurer ; a copy of the contract of sale was to be filed in the office of the secretary of the Commonwealth.   Upon the payment of the bonds the state treasurer was required to certify the fact to the secretary of the Commonwealth, who was required to issue to the purchaser a deed for the land, under his hand and the seal of the Commonwealth, which deed should pass the title of the Commonwealth to the purchaser.

In pursuance of a warrant issued to Joseph Foresman for 300 acres of land, a survey was made on the 8th of April for 325

[Wolfe *v.* Reynolds.]

acres, including the land in dispute ; the survey was accepted September 3d 1817, and a patent was issued to Foresman on the 28th of July 1830. This title is vested in the defendant, Jacob Wolfe.

On the 17th of January 1839, agreeably to the Act of Assembly of March 25th 1814, the Nicholson board sold to William McCoy, agent for Burd Patterson, a body of the Nicholson lands in Northumberland county, including the land warranted in the name of Betterton, and on the 6th of February 1839, Francis R. Shunk, secretary of the Commonwealth, executed and delivered to McCoy, as agent of Burd Patterson, a deed for the same lands under the great seal of the Commonwealth. This title by sundry conveyances is vested in the plaintiffs.

The foregoing facts appeared on the trial of the case, before Mayer, P. J. of the 25th district.

He charged the jury :—

* * * " The defendant claims that, as at the time the title of the Benjamin Betterton was held by the Commonwealth and before the sale of it to William McCoy, the Commonwealth had granted her warrant to Joseph Foresman, accepted the survey made in pursuance of said warrant, had issued her patent, both she and her grantees are estopped from setting up the title acquired under said sale. We do not assent to this proposition. The laws providing for the acquisition of title from the Commonwealth, by warrant, survey and patent, have reference to unappropriated land, and the officers charged with the execution of them have no authority whatever to grant titles to lands of any other description. As was said by SHARSWOOD, J., in Wilson *v.* Horner, 9 P. F. Smith 162 : ' The officers of the Land Office are public agents intrusted with the power of granting lands in the name of the Commonwealth, not absolutely, but under the conditions prescribed by law, of which conditions every man is bound to take notice.' Per Tilghman, C. J., Bixler *v.* Baker, 4 Binn. 219 : ' The officers. of the Land Office are not proprietors of the land granted by them, that they can grant them without regard to quantity or price. The lands belong to the state, and the land officers act only as the agents of the state in disposing of them, and are limited in their action by the authority granted to them in this behalf, so that if they grant lands belonging to the state in a manner not authorized by law the grant must be considered void :' Kelly *v.* Graham, 9 Watts 117. ' And where the state has made special provisions for the sale of lands peculiarly situated either in respect to location or mode of acquisition, these special provisions must be pursued, and the general laws for the sale of unappropriated lands have no application :' Straub *v.* Dimm, 3 Casey 37. In Skeen *v.* Pearce, 7 S. & R. 304, Duncan, J., says : ' But lands which have been granted by the state, and which escheat and fall back to the state for want of heirs, alienage or forfeiture for treason, or any

[Wolfe v. Reynolds.]

other cause, are not open for settlement or grant, as the common unappropriated land of the state:' Blaine v. Crawford, 1 Yeates 290. For, as was truly observed by the court, the same law which vested the property in the state, qualified the sale of it, by the instrumentality of certain persons authorized for the specific purpose. Lands vested by forfeiture for treason, could not therefore be disposed of in the common term of vacant lands. Where the law prescribes the mode and manner in which rights to lands accruing to the state, by reason of any default in the grantee, shall issue, that mode and no other must be pursued. ·In Straub v. Dimm, Lewis, C. J., says: ' It follows that where the Commonwealth acquires title to land by alienage by forfeiture upon an attaint, by alienation in mortmain, or by escheat, her interest must be disposed of in the manner prescribed by the· statutes relating to such estate, and cannot be acquired by warrant and survey in the ordinary mode.' Applying these principles to the title acquired. under the Joseph Foresman warrant, and it is clear that it cannot prevail against the title acquired by William McCoy under his purchase of the Betterton tract of land. Sect. 5 of the Act of Assembly of 19th of March 1807, after providing how the Commonwealth may acquire the title to the Nicholson lands, prescribes in what manner they shall be disposed of; ' and the land so purchased shall be disposed of in such manner as shall be hereafter directed by law.' And the Act of the 28th of March 1814, having prescribed the manner in which these lands were to be disposed of, and that mode having been pursued in the sale made to McCoy, the acts of the officers of the Land Office in granting a warrant to Joseph Foresman were in excess of their authority, were void, and conferred no title, for the reason that the land covered by the Foresman warrant had been previously appropriated by the Betterton warrant, and for the additional reason that the Acts of Assembly in regard to the Nicholson lands had prescribed a specific mode of selling said lands and that mode must be pursued. * * * We instruct the jury to find a verdict for the plaintiffs."

The jury found for the plaintiffs.

The defendant took a writ of error and assigned the instruction of the court for error.

*G. W. Zeigler* and *G. F. Miller & Son,* for plaintiff in error.— The state having sold this land and received the purchase-money could not afterwards grant it to another: Wolf v. Goddard, 9 Watts 547 ; Washabaugh v. Entriken, 10 Casey 74 ; Commonwealth v. Moltz, 10 Barr 530 ; McWilliams v. Nisly, 2 S. & R. 507 ; Brown v. McCormick, 6 Watts 60. The Commonwealth had a perfect title when the patent was issued to Foresman : Hole v. Rittenhouse, 1 Casey 497.

*S. P. Wolverton* and *J. W. Comly,* for defendants in error.—

[Wolfe *v.* Reynolds.]

The officers of the Land Office have no authority to grant warrants for any but unappropriated lands, and appropriated lands re-acquired in any manner by the state can be granted only by the person and in the manner authorized by an Act of the General Assembly : Blaine *v.* Crawford, 1 Yeates 287 ; Skeen *v.* Pearce, 7 S. & R. 303 ; Oyster *v.* Bellas, 2 Watts 397 ; Straub *v.* Dimm, 3 Casey 36 ; Bixler *v.* Baker, 4 Binn. 213 ; Kelly *v.* Graham, 9 Watts 116 ; Wilson *v.* Horner, 9 P. F. Smith 155.

Judgment was entered in the Supreme Court, February 7th 1876,

PER CURIAM.—The land in question was patented to John Nicholson in the year 1794. Hence it was no longer open to warrant and survey as unappropriated land under the laws and usages of the Land Office. When it was bought in by the state under her claim against John Nicholson, it stood in a new relation as her property, and was subject to sale only under the laws providing for the sale of the lands of Nicholson. Instead of a patent in the ordinary form, the conveyance was required by the Act of 1814 to be made by the secretary of the Commonwealth, after the proceedings provided for in the act. Hence the warrant and survey to Foresman, and patent under which defendant claimed, were unauthorized and void. The Commonwealth was not estopped by them, for the title of Foresman was obtained by misrepresentation ; that is to say, upon an application for unappropriated land. Had the officers of the Land Office been informed that the land had been John Nicholson's, and bought in by the state, no warrant would have been issued. Lands returning to the state by escheat, forfeiture, or other proceeding investing her with title, are not governed in their disposition by the ordinary laws and usages regulating the Land Office. In addition to the cases cited on this point by the learned judge, the same question was decided recently in the case of Poor *v.* McClure (27 P. F. Smith 214), in which a warrant and survey had been laid upon a part of the bed of the Allegheny river. The charge of the court below appears to be free from error.                           Judgment affirmed.